# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **EDWIN B. MINCHIN, III**,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**ASCEND WELLNESS HOLDINGS, INC., a Corporation of the State of New York; ABNER KURTIN, an Individual; [NAME UNKNOWN] KURTIN, an Individual; RYAN DAWSON, an Individual; JEFF ARIOLA, an Individual; TRACY HUFF, an Individual; HOWARD HORDYK, an Individual; CARL CARUSO, an Individual; SAM FERRAINO, an Individual; MICHELLE MARINNIE, an Individual; KARLOS PAUL, an Individual; UNITED FOOD AND COMMERICAL WORKERS LOCAL UNION 360, a union and labor organization**,<br><br>　　　　　　Defendants. | Docket No. 2:25-cv-17576 (EP) (SDA)<br><br>**OPINION AND ORDER**<br><br>March 25, 2026 |

**STACEY D. ADAMS**, United States Magistrate Judge.

**THIS MATTER** comes before this Court on the Motion to Disqualify Attorney Mark E. Belland, Esq. and the law firm of O'Brien, Belland, & Bushinsky LLC (the "Firm" and, together with Attorney Belland, the "Union's Counsel") filed by *pro se* Plaintiff Edwin B. Minchin, III ("Plaintiff") (ECF No. 22); and Defendants UFCW Local 360 (the "Union"), Sam Ferraino Jr., and Michelle Marinnie (collectively, the "Union Defendants") having opposed the Motion (ECF No. 25); and Plaintiff having filed a reply (ECF No. 26); and, with leave of Court, the Union Defendants having filed a sur-reply and supporting certification for the Court's *in camera* review. The Court, having reviewed the parties' respective submissions, decides this Motion without oral

1

argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, and for good cause shown, the Motion is **DENIED**.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, brings this action seeking over $12 million in damages for various employment-related claims asserted against his former employer, Defendant Ascend Wellness Holdings, Inc. ("Ascend"), a number of Ascend's employees, his Union, and several Union representatives. (ECF No. 1-1, Ex. A ("Compl.")). Although Plaintiff's 231-page complaint is difficult to discern, his claims appear to include retaliation, harassment, hostile work environment, OSHA violations, negligence, gross negligence, wage theft, constructive discharge, fraud, concealment, negligent infliction of emotional distress, negligent hiring/retention, promissory estoppel, and negligent misrepresentation. (*Id.*). As summarized by Plaintiff, the "subject of this lawsuit" is "retaliation, unsafe conditions, wage disputes and union conduct." (ECF No. 26 at ECF-designated p. 4).

Plaintiff commenced this case in the Superior Court of New Jersey, Law Division, Sussex County, on October 8, 2025 under Docket No. L-000518-25. (ECF No. 1). On November 14, 2025, the Union Defendants removed the case to federal court with the consent of the Ascend Defendants (Defendants Ascend, Abner Kurtin, Ryan Dawson, Jeff Ariola, Tracy Huff, Howard Hordyk, and Carl Caruso (collectively, the "Ascend Defendants")) (*Id.*).[1] On November 17, 2025, Plaintiff filed a motion to remand, which is currently pending before the Court. (ECF No. 10).

On December 11, 2025, Plaintiff filed this Motion to disqualify the Union's Counsel alleging that he consulted with the Firm as a prospective client, disclosed confidential information

---

[1] It does not appear that Defendant Karlos Paul has been served with the Summons and Complaint and, thus, he has not yet appeared in this matter and his consent to removal was therefore not required. *See* 28 U.S.C. § 1446(b) ("all defendants who have been *properly joined and served* must join in or consent to the removal of the action") (emphasis added).

to the Firm in the course of that consultation, and that the Firm now represents the Union Defendants in a matter materially adverse to Plaintiff, in violation of Rules of Professional Conduct 1.18. (ECF No. 22). Specifically, Plaintiff claims he spoke with Attorney Samantha Leeds from the Firm, during which conversation he disclosed "retaliation details, internal union problems, workplace safety violations, wage and hour issues, documents and evidence in [his] possession, and anticipated legal strategies." (ECF No. 22 at ECF-designated p. 4). Plaintiff admits, however, that he was referred to the Union's Counsel by his Union representative, Michelle Marinnie, and that he knew he was speaking with the Union's lawyers. (Compl. at ECF-designated pp. 94, 114). Plaintiff claims that the instant lawsuit implicates the same conduct that Plaintiff discussed with Attorney Leeds. (ECF No. 22 at ECF-designated p. 3).

The Union Defendants dispute this. They explain that Plaintiff, a union member, spoke with the Firm in its capacity as the Union's Counsel. (Leeds Cert. ¶ 3). During the thirty-minute call, Plaintiff told Attorney Leeds he believed he was retaliated against after he advocated for a parking spot for a handicapped co-worker. (*Id.* ¶ 8). Plaintiff also shared that he had asked a question during harassment training held by his employer and, as result, was sent to an employee resource therapist. (*Id.* ¶ 9). Following the meeting, Attorney Leeds sent an email to one of her colleagues in which she recommended the case be referred out. (*Id.* ¶¶ 5, 11). At no point during the meeting did Plaintiff raise any concerns regarding workplace safety, OSHA-related concerns, or alleged wage underpayments – the issues raised in his current lawsuit. (*Id.* ¶ 12). Finally, the Union's Counsel explains that Plaintiff provided no documents during the meeting, did not identify any potential witnesses, and did not disclose litigation strategy. (*Id.* ¶¶ 14-17).

## LEGAL STANDARD

A "'district court's power to disqualify an attorney derives from its inherent authority to

3

supervise the professional conduct of attorneys appearing before it.'" *Marchisotto v. Malik*, No. 20-cv-20426, 2024 WL 1929504, at *2 (D.N.J. May 2, 2024) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). The conduct of attorneys admitted to practice before the United States District Court for the District of New Jersey is governed by the Rules of Professional Conduct ("R.P.C."), as revised by the New Jersey Supreme Court. *See* L. Civ. R. 103.1(a). The moving party must show "'disqualification is warranted, either because a [Rule of Professional Conduct] was violated or because sufficient doubt exists as to the propriety of further representation.'" *Marchisotto*, 2024 WL 1929504, at *2 (quoting *Shaikh v. Germadnig*, No. 22-cv-2053, 2022 WL 16716116, at *2 (D.N.J. Nov. 4, 2022) (further citations omitted)).

Courts "view motions to disqualify counsel with a skeptical eye out of concern that they are made tactically to separate a litigant from its counsel of choice." *Sun Pharm. Indus., Inc. v. Biofrontera Inc.*, No. 23-cv-20601, 2026 WL 636821, at *5 (D.N.J. Mar. 6, 2026) (citing *Prudential Ins. Co. of Am. v. Chelchowski*, No. 16-cv-258, 2017 WL 1549466, at *3 (D.N.J. Apr. 28, 2017)). "[D]isqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quotations and citations omitted). The "party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998). "The motion must be supported by facts that must be closely scrutinized 'to prevent unjust results.'" *Gillespie v. Newark Bd. of Educ.*, No. 21-cv-18990, 2024 WL 2354502, at *4 (D.N.J. May 23, 2024) (quoting *Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)); *see also Carreno v. City of Newark*, 834 F. Supp. 2d 217, 224 (D.N.J. 2011). "Even where a violation is shown . . . disqualification is not automatic, for '[e]ven when an ethical conflict exists (or is

4

assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy.'" *Marchisotto*, 2024 WL 1929504, at *2 (quoting *In re Boy Scouts of Am.*, 35 F.4th 149, 160 (3d Cir. 2022)).

Here, Plaintiff seeks to disqualify Attorney Belland and the Firm pursuant to R.P.C. 1.18, which states, in relevant part:

> (a)    A lawyer who has had communications in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues, except as RPC 1.9 would permit in respect of information of a former client.
>
> (b)    A lawyer subject to paragraph (a) shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).

Pursuant to R.P.C. 1.18, "an attorney's consultation with a prospective client may preclude the attorney from accepting a subsequent representation adverse to the client even though an attorney-client relationship was not formed." *Bell v. Cumberland Cnty.*, No. 09-cv-6485 (JHR) (JS) 2012 WL 1900570, at *8 (D.N.J. May 23, 2012). Under R.P.C. 1.18, disqualification is appropriate "where the matter of consultation and the adverse matter are the same or substantially related, and the information revealed during the consultation is significantly harmful to the former prospective client in the current adverse matter." *Id.* at *8.

### ANALYSIS

In the instant matter, there is no basis for disqualifying Attorney Belland or the Firm based upon Plaintiff's brief telephone conversation with Attorney Leeds on August 22, 2025.

First, Plaintiff was not a prospective client under R.P.C. 1.18. Plaintiff knew that Attorney Leeds and the Firm represented the Union. Plaintiff spoke to the Firm *in its capacity as the Union's*

5

*counsel*. (Leeds Cert. ¶ 3). He spoke with the Union's Counsel to discuss a complaint about his employer. Plaintiff was clear on the Firm's role at all times, as admitted in his own Complaint. (*Id.* ¶ 18). (*See* Compl. at ECF-designated p. 94 (explaining how Michelle Marinnie "Plaintiff's primary union representative in early 2024… referred him to the *union's law firm*. Plaintiff contacted the firm the same day, later speaking with attorney Samantha Leeds on 8/22") (emphasis added); Compl. at ECF-designated p. 114 ("When pressed in August 2025, Michelle pushed Plaintiff to the *union's law firm*. Plaintiff contacted attorney Samantha Leeds on 8/22/25, who promised follow-up.") (emphasis added)). A "prospective client" is "[a] person who communicates with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter…." R.P.C. 1.18(d). Plaintiff's telephone call with Attorney Leeds was not a consultation to seek legal representation by the Firm. Rather, he spoke with the Union's Counsel at the urging of his union representative to seek the Union's guidance as to how to best handle his issues with this employer. Following that conversation, Attorney Leeds recommended that the case be referred out to counsel who could assist Plaintiff with his potential discrimination claim. (Leeds Cert., Ex. A).

Second, there is no evidence that Plaintiff provided the Union's Counsel with any confidential information. Plaintiff makes general allegations that he disclosed "confidential details" to Attorney Leeds, but he fails to identify with any specificity what information he allegedly disclosed. (ECF Nos. 22, 26). Plaintiff states only that he "gave the Firm his assessment of internal union misconduct, detailed accounts of alleged wage theft and safety violations at Ascend, the identity and content of documents and recording he possessed, the names of key witnesses, and his planned theory and strategy for bringing claims against both Ascend and the Union in connection with the exact same events that underlie this lawsuit." (ECF No. 26 at ECF-designated p. 8). None of this is reflected in Attorney Leeds' contemporaneous email. Contrary to

6

Plaintiff's conclusory assertions, Attorney Leeds' certification indicates that Plaintiff did not (i) provide the name of any potential witnesses; (ii) supply the firm with any documentary evidence; and (iii) offer any details regarding his anticipated litigation strategy. (Leeds Cert. ¶¶ 14-16). The certification establishes nothing more than a brief telephone conversation, during which limited basic information was conveyed by Plaintiff, no documentation was exchanged, and the call ended with Attorney Leeds recommending Plaintiff be referred to another attorney for assistance with his potential employment claims. (*Id.*, *passim*). There were certainly no conversations about Plaintiff bringing any claims against the Union. (*Id.* ¶ 13).

Third, even if the Court were to find that Plaintiff was a prospective client under R.P.C. 1.18, the information discussed during the brief conversation between Plaintiff and Attorney Leeds is not "significantly harmful" to him within the meaning of R.P.C. 1.18. For information to be deemed "significantly harmful," "disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and specific." *Bell*, 2012 WL 1900570, at *8 (quoting *O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 206 N.J. 109, 126 (2011)). Plaintiff's thirty-minute conversation with Attorney Leeds was limited to a high-level discussion of two issues related to creating an additional parking space for a handicapped co-worker and Plaintiff being required to see an employee resource therapist after raising a question during harassment training. (Leeds Cert. ¶¶ 7-9). These two factual recitations are a small part of Plaintiff's 231-page complaint. (*See* Compl.).

Further, all of the information conveyed to Attorney Leeds by Plaintiff is also recited in his publicly-filed Complaint, demonstrating that it was not confidential. (*See, e.g.,* Compl. at ECF-

designated pp. 30, 31, 52, 86, 89, 91, 98, 110, 114, 145, 154, 221 (wherein Plaintiff discusses being called an "embarrassment to the team"); Compl. at ECF-designated pp. 11-12, 15, 30, 31, 60, 65, 67, 75-77, 82, 97, 110, 114, 116, 119, 145, 152, 154-56, 173-76 (wherein Plaintiff discusses being referred to the employee assistance program and being required to see a therapist)). If the information was not confidential then its disclosure to counsel is not significantly harmful under R.P.C. 1.18. *ADP, Inc. v. PMJ Enters., LLC*, No. 06-cv-2042 (PGS), 2007 WL 836658, at *5 (D.N.J. Mar. 14, 2007) (finding that information was not significantly harmful under R.P.C. 1.18 because it was not confidential and was disclosed in the complaint); *In re Onejet, Inc.*, 614 B.R. 522, 533 (Bankr. W.D. Pa. 2020) ("information cannot be significantly harmful to the prospective[] client if: (1) it can be procured from an alternate source; or (2) it is substantially likely to be revealed during discovery"). Accordingly, Plaintiff has failed to prove that he disclosed significantly harmful information to Attorney Leeds.

In sum, there is no basis for disqualification of Attorney Belland or the Firm because (i) Plaintiff did not speak to Attorney Leeds as a prospective client but, rather, in her capacity as counsel for the Union; (ii) Plaintiff did not disclose any confidential information to Attorney Leeds; and (iii) the information relayed to Attorney Leeds was not significantly harmful to Plaintiff's case. As such, Plaintiff's motion is DENIED.

## CONCLUSION

Because Plaintiff failed to show an R.P.C. violation warranting possible disqualification and failed to substantiate any other basis for disqualification, Plaintiff's Motion is **DENIED**. Accordingly:

**IT IS**, on this **25th** day of **March, 2026**, for good cause shown, hereby **ORDERED** as follows:

1.  Plaintiff's Motion to Disqualify (ECF No. 22) is **DENIED**.

2.  The Clerk is directed to terminate ECF No. 22.

*/s/ Stacey D. Adams*
Hon. Stacey D. Adams, U.S.M.J.

9